[Doe, *ex dem.* Anniston City Land Co. v. Edmondson.]

# Doe, *ex dem.* Anniston City Land Co *v.* Edmondson.

## *Ejectment.*

(DECIDED FEB. 8, 1906, 40 So. REP. 505.)

1. *Evidence; Declaration; Title; Person Not in Possession.*—A declaration made by a deceased patentee of land, while on the land, (but not in possession, and with no claim of ownership), that he had sold the land to a third person, is not admissible as evidence for the plaintiff claiming through such third person.

2. *Witnesses; Competency; Interest.*—It being shown that J., in whom one of the demises was laid, was dead, and no recovery could be had on such demise, it is not good grounds of objection to the competency of the witness M. that J's estate was interested in the result of the suit.

3. *Deed; Adverse Possession; Color of Title.*—A deed describing the land and containing a warranty of title, but no words of transfer, was properly admitted as color of title, and as tending to show an asserted claim of ownership to the land by the grantee, an essential element of adverse possession.

4. *Same; Warranty of Title; Estoppel.*—A deed containing no words of transfer, but describing certain lands, and containing a warranty of title, works an estoppel against the grantor to assert title against grantee, or to defeat an assertion of title by grantee against grantor, and also estops grantor to assert an after acquired title to the lands against grantee.

5. *Adverse Possession; Evidence; Permission to Use Land.*—To estop defendant, who claims title by adverse possession, to testify that he gave C. permission to make charcoal upon the land, it is incumbent upon plaintiff to show that C., at that time, occupied some representative or fiduciary relation to one under whom plaintiff claims.

6. *Same; Notoriety of Claim.*—One claiming land by adverse possession may show that it was generally known in the vicinity of the land that such one claimed title to it, not for the purpose of showing title, but as showing the notoriety of his claim.

7. *Same; Taxation; Assessment: Evidence.*—The plaintiff in ejectment having introduced the original tax assessment books to show that the lands claimed adversely by defendant had not

[Doe, *ex dem.* Anniston City Land Co. v. Edmondson.]

been assessed to him, the defendant may testify that he gave such land in to be assessed for taxes, the original assessment sheets not being in his possession and being presumptively lost, as defendant cannot be held to be concluded by any mistake that may have been made by the tax assessor in failing to transcribe an assessment sheet upon the books.

8. *Trial; Instructions; Assumption of Facts.*—Where there is a conflict in the evidence as to any fact, a charge which assumes such a fact,, is properly refused.

9. *Same; Submitting Question of Law to Jury.*—It being undisputed that at the time of the execution of the deed from W. I. Co. to A. C. L. Co., E. was in the adverse possession of the land attempted to be conveyed thereby, the deed was void as to E., as a matter of law, and the jury should have been so instructed, and a charge which left it to the jury to determine whether the W. I. Co. had conveyed all its title before the commencement of this action, was improper, in that it submitted a question of law to the jury.

10. *Ejectment; Title of Plaintiff.*—In the absence of evidence showing that the patentee of the land, and who was shown to have been dead before the commencement of this suit, had ever conveyed the land to any one, his patent did not operate as color of title to plaintiff or any of plaintiff's lessors, as patentee's legal title descended to his heirs.

13. *Adverse Possession; Color of Title.*—A deed executed at a later day, and dated back several years, is not thereby rendered void, but operates as color of title from the true date of its execution. It relieves the grantee of being a trespasser, but does not operate to extend his possession beyond his *possessio pedis* for the time preceding its true execution.

14. *Ejectment; Defenses; Title in Third Persons.*—If no estoppel be shown, the defendant in ejectment being in possession under color of title, and under purchase from another, may avail himself of the fact that the legal title is in a third person, and put plaintiff to proof of title by adverse possession, and unless plaintiff can establish such title in one of its lessors, living at the commencement of the suit, plaintiff cannot recover.

15. *Evidence; Declarations by Grantor.*—Declarations by a grantor made after the execution of a deed to his grantee can not affect the title of the grantee.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN.

This was an action of ejectment, begun in the city court of Anniston by appellant against appellee. The first demise was laid in Ben Johnson; the second, in the Oxford Iron Company; the third, in A. O. Stewart, as sheriff; the fourth, in A. L. Tyler; the fifth, in the Woodstock Iron Company; the sixth, in the Anniston Land & Improvement Company; the seventh, in D. T. Parker and Cornelia A. Parker; the eighth, in appellant. During the progress of the trial the plaintiff offered to prove by James Johnson that, after witness returned from Randolph county in 1863, witness' father, Ben Johnson, the patentee, and the man in whom the first demise is laid, but who was not then living on or claiming the land, took him upon the land in litigation, and pointed it out to him, and told him that he had sold it to the Oxford Iron Company. The court sustained defendant's objection to this testimony. Witness Ben Maddox was permitted to testify, over plaintiff's objection and exception, that the deed from James Ford to witness to the lands in dispute, part of which deed he testified was lost, had, as a witness on it, the name of Ben Johnson, and that witness' name appeared on the part of the deed that was lost. The plaintiff's objection to this testimony was that Ben Johnson was one of the demisors of plaintiff, and Ben Maddox was an interested party in the suit, on account of his warranty deed to defendant, Edmondson, to the lands in dispute. The deed from Ben Maddox to W. J. Edmondson was in the following words: "State of Alabama, Calhoun County. Know all men by these presents, that for and in consideration of the sum of fifty dollars to the undersigned in hand paid by W. J. Edmondson, the receipt whereof is hereby acknowledged, W. J. Edmondson the following real estate, to-wit: (Here follows description of land.) To have and to hold to the said W. J. Edmondson, his heirs, together with all the rights and privileges and appurtenances thereunto belonging or in other ways appertaining, and the first party, his heirs, executors, and administrators, do and by these presents will forever warrant and defend the said title from his heirs and from all and every person whatsoever. Signed, sealed, and delivered, 4th day of

December, 1868." Signed and acknowledged before a justice of the peace. Margaret Ford testified that her husband, James Ford, bought the land from Ben Johnson in 1858 or 1859. Plaintiff moved to exclude this statement.

The plaintiff requested the court to give the following written charge: "The court charges the jury that the failure of Edmondson to assess for taxes the lands in litigation must be considered by the jury as a declaration by Edmondson that he did not claim the land during the years he failed to assess it for taxes." This is referred to in the opinion as charge 1. The defendant requested the following written charges, which the court gave: Charge 2. "The court charges you that there is no evidence before you of any color of title in the plaintiff, or in the Oxford Iron Company, or any one subsequent to the Woodstock Iron Company, through whom plaintiff claims, to the land in dispute, prior to the year 1874." Charge 5. "If you find from the evidence, under the charge of the court, that the Woodstock Iron Company had conveyed away its whole title to the land before this action was brought, then plaintiff is not entitled to recover on the alleged demise of the Woodstock Iron Company." Charge 7. "In considering the question of adverse possession, you must exclude the period of time from January 11, 1861, to September 21, 1865." Charge 15. "The court charges you that it is wholly immaterial whether Maddox paid Ford anything, or whether Edmondson paid Maddox anything, for the lands sued for. Plaintiff cannot recover unless you find from the evidence, under the charge of the court, plaintiff has acquired a title to them by adverse possession." Charge 16. "The court charges you that in this case the plaintiff must rely for a recovery on the strength of its own title, and not on the weakness of defendant's title; and unless you find from the evidence, under the charge of the court, that plaintiff, or some one of plaintiff's demisors, had acquired a title to the land in controversy by ten years adverse possession, plaintiff is not entitled to recover." Charge 19. "The court charges the jury that if they find from the evidence

that Edmondson bought the land in dispute from Maddox, and Maddox executed to him the paper writing purporting to be signed by Maddox that has been introduced in evidence, and Edmondson went into possession of said lands claiming it as his own, and held or had adverse possession of it for a period of 10 consecutive years before the bringing of this suit, then Edmondson acquired a title to the land by adverse possession." Charge 22. "The court charges you that the plaintiff has not shown any title or color of title from Ben Johnson to the Oxford Iron Company, to the land in dispute." Charge 27. "The court charges the jury that any statements made by Ben Maddox after he made a deed to Edmondson, out of court, would not affect the title of Edmondson."

J. J. WILLETT, for appellant.—The evidence of James Johnson was competent and admissible upon the extreme improbability of its untruth and that it was a declaration against interest.—Sedgwick & Wait Title to Land (2nd Ed.) Section 811; Newell on Ejectment, p. 290. What was said in reference to this testimony on the former appeal of this case (127 Ala. 445) is not applicable here, as the declarant is shown to have been on the land when he made the declaration. The court should have sustained plaintiff's objection to and motion to exclude Maddox's disposition. He was an interested party and Ben Johnson is shown to have died.—Section 1794, Code, 1896; *Hagan v. Easter*, 111 Ala. 480; *First National Bank v. Chafin*, 108 Ala. 246; *Moore v. Walker*, 124 Ala. 199; *Moore v. Williams*, 129 Ala. 329; *Miller v. Mayer*, 26 So. 892. The court erred in admitting the deed from Maddox to Maddox.—*Webb v. Mullin*, 78 Ala. 111; *Jones v. Morris*, 61 Ala. 518. Nor was said deed good as color of title.—*Reddick v. Long*, 124 Ala. 261; *Jones v. Pelham*, 84 Ala. 208; *L. & N. R. R. Co. v. Boykin*, 76 Ala. 560; *Black v. T. C. I. & R. R. Co.*, 93 Ala. 113; Newell on Ejectment, 772. The court erred in permitting Edmondson to state that he gave Costner permission to make charcoal on the land in dispute. The facts are different now from the former appeal in this case (127 Ala. 446.) One of the demises is laid in Wood-

stock Iron Co., and Costner being dead and Edmondson being the defendant in this suit, this testimony was illegal.—Section 1794, Code 1896; *Warten v. Strain*, 82 Ala. 311; *Mobile Savings Bank v. McDonnell*, 87 Ala. 736. This exclusion as to a transaction with a deceased agent extends to corroborative, strengthening or weakening testimony.—*Miller v. Cannon*, 84 Ala. 59; *Dismukes v. Tolson*, 67 Ala. 386; *Killen v. Lide*, 65 Ala. 505; *Tisdale v. Maxwell*, 58 Ala. 40. The court should not have permitted the witness Strickland to testify that it was generally known in the vicinity of the land in dispute that Edmondson claimed title to it. Title cannot be proven by reputation or general notoriety.—*Goodson v. Brothers, Administrator*, 111 Ala. 590; *Ross v. Goodwin*, 88 Ala. 391; *Woodstock Iron Co. v. Roberts*, 87 Ala. 437; *Benje v. Creah's Administrator*, 21 Ala. 151; *Walker v. Hughes*, 90 Ga. 52; *Howland v. Crocker*, 7 Allen (Mass.) 153; *Green v. Chelsea*, 24 Pickering (Mass.) 71; Sedgwick & Wait on Title to Land (2d Ed.) Section 804, *et seq.*

The court erred in permitting defendant Edmondson to testify as to the declaration of Katherine Johnson; also that from sixty-eight to seventy he assessed this land for taxes. The court erred in refusing to exclude from the deposition of Ford the statement "my husband bought this land, the land in dispute from Ben Johnson in 1868." The court erred in refusing to give charge 1 requested by plaintiff.—*Wright v. Meriweather*, 51 Ala. 184; *Larkin v. Baty*, 111 Ala. 303; *Birmingham Mineral R. R. Co. v. Smith*, 89 Ala. 305; *McGhee v. Malone*, 37 Ala. 259; *Balcum v. George*, 65 Ala. 259; *Lucy v. T. & C. R. R. Co.*, 92 Ala. 247. The court erred in giving charge 2 requested by defendant. It is an invasion of the province of the jury. The court erred in giving charge 5 requested by the defendant.—*Pearson v. King*, 99 Ala. 126; *Harvey v. Carlisle*, 23 Ala. 635. The court erred in giving charge 7 requested by the defendant. Charges 15 and 16 were erroneous in view of the facts of this case.—*Higdon v. Kennemer*, 120 Ala. 193; *Garrett v. Lyle*, 27 Ala. 586; *Wilson v. Glenn*, 68 Ala. 383; *Reddick v. Long, supra; Brand v. U. S. Car*

*Co.,* 128 Ala. 580; *Murray v. Hall,* 97 Ala. 588. The court erred in giving charge 19 requested by defendant.—*Webb v. Mullins, supra.* The deed was not operative as color of title.—*Reddick v. Long, supra; Jones v. Pelham, supra; Black v. T. C. I. & R. R. Co., supra;* Newell on Ejectment, p. 772. Charge 23 was misleading as was charge 27.

MATTHEWS, MARTIN & MATTHEWS and E. H. HANNAH, for appellee.—There is but one question presented by the record that is not settled by the former opinion of the court in this case (127 Ala. 445), and that is whether the testimony of Edmondson as to the assessment by him of these lands for taxes during the years sixty-eight to seventy was admissible. The failure of the tax assessor to do his duty in assessing the lands of the defendant properly cannot operate to the prejudice or harm of the defendant.—*Crook v. Anniston City Land Co.,* 93 Ala. 8; *Watson v. Kent,* 78 Ala. 602. There is nothing in the objection to the testimony of Edmondson that he gave Costner permission to coal this land.—127 Ala. 445. There is nothing in the objection to the introduction of Maddox's deed in connection with the patent to Ben Johnson.—*Wood v. Transportation Co.,* 84 Ala. 560; 127 Ala. 446. There was nothing in the objection to the evidence of Maddox and Edmondson that Ben Johnson's name was signed as a witness to the deed. Maddox's deed to Edmondson was color of title or at least was sufficient as claim of title, and an instrument insufficient as color of title may be evidence of a claim of title.—Sedgwick & Wait on Title to Land; *Woods v. M. C. & T. R. Co., supra; Herbert v. Hanrick,* 16 Ala. 581; *Abercrombie v. Baldwin,* 15 Ala. 372; *Saltmarsh v. Crommelin,* 24 Ala. 362; *Cooper v. Watson,* 73 Ala. 252. The most that can be said of it, if error at all, is that it was without injury, as the original patent was introduced which was color of title.—*Montevallo Traction Co. cases, supra;* this case, 127 Ala. 446.

Where there is conflicting evidence as to acts of possession by two parties claiming the same land, the rule is that where neither party has the true title, the older

possession gives the better right, and such right is not defeated by a subsequent entry and occupation by the opposing claimant until it has ripened into title by adverse possession.—*Reddick v. Long,* 124 Ala. 262.

TYSON, J.—This is the third appeal in this case. The opinions delivered on the former appeals may be found in 127 Ala. 445, 30 South. 61, and 37 South. 424.

The first assignment of error is based on the refusal of the trial court to permit plaintiff to prove a certain declaration of Ben Johnson, the patentee and former owner of the land, who is shown to have died in 1878, to his son. At the time this declaration was made, Johnson was not living on the land and did not claim to own it. It is true he was on it; but, on the facts stated in the predicate for the introduction of the declaration, it is apparent that he was not in possession of it. The ruling of the court was therefore correct.

Johnson having died long before this suit was instituted, it is obvious that no recovery can be had upon the demise laid in him. He therefore was not a party to the suit nor interested in the result of it. The objection to the competency of Maddox as a witness, based upon Johnson's interest, is therefore without merit.

The instrument executed by Maddox to Edmondson, describing the land, which seems to have been admitted by the court as color of title, contains no words of transfer, but does contain a warranty of title. In this respect it differs from the one in *Webb v. Mullins,* 78 Ala. 111, and is in all respects similar to the one in *Brown v. Manter,* 53 Am. Dec. 223. By force of the warranty Maddox was forever estopped to claim title to the land against Edmondson. If he had the title to the land when this instrument was executed, he could never recover it from Edmondson; nor could he defeat Edmondson's right of recovery against him after its execution. And if he had not the title at the time of its execution, but afterwards acquired it, he could never assert it against Edmondson. In consonance with this and as supporting it, we quote what was said in *Threefoot Bros. v. Hillman,* 130 Ala. 255, 30 South. 517, 89 Am. St. Rep.

[Doe, *ex dem.* Anniston City Land Co. v. Edmondson.]

39: "Such estoppel, growing out of a written contract and not resting in pais, would have the effect to pass and vest the legal title, which, of course, can always be asserted in a court of law"—which is fully sustained by the cases cited in support of it.  Such being the legal effect of the warranty, all the essential elements of color of title are shown by the instrument.  It was in recognition of this principle that the court held, in *Brown v. Hanter*, the deed to be admissible in evidence.  Furthermore, the instrument was clearly competent as tending to show that Edmondson asserted a claim of ownership to the land which is one of the essential elements of adverse possession.—*Doe ex. dem. Anniston City Land Co. v. Edmondson, supra;* Sedgwick & Wait on Trial of Title to Land, § 768.

In order to deprive Edmondson of the right to testify that he gave Costner permission to make charcoal on the land, and to put the court below in error in permitting him to so testify, it is obligatory on plaintiff to show that Costner was acting in some representative or fiduciary capacity to the Woodstock Iron Company.  On the facts stated in the record this was not shown.

There was no error in permitting the witness Strickland to testify that in 1874 it was generally known in the vicinity of the land in dispute that Edmondson claimed the title to it.  This was competent to show the notoriety of his claim, but not to show his title.—1 Cyc. 1151; *Woods v. Montevallo C. & T. Co.,* 84 Ala. 560, 3 South. 475, 5 Am. St. Rep. 393; *Tenn. C. I. & R. R. Co. v. Linn,* 123 Ala. 112, 26 South. 245, 82 Am. St. Rep. 108.

It appears that the statement of Catherine Johnson, objected to by the plaintiff, was part of the conversation brought out by it on a cross-examination of Edmondson.  There was no error committed in overruling the objection.

During the progress of the trial the plaintiff introduced in evidence the original tax assessment books of Calhoun county for a number of years, beginning with 1868 and including the year 1887, showing that during none of these years was the land in controversy assessed by the defendant.  The entries required on these books

are made by the tax assessor from the assessment lists. In truth they are nothing more than copies of the assessment lists. Manifestly, the only way it could be shown by these books that the land in controversy was not assessed to or by defendant for taxes was that the land did not appear upon them along with the other property assessed to him. Clearly this showing is not conclusive upon Edmondson, so as to deprive him of the right to show that in fact it was assessed. He cannot be held to be concluded by any mistake the assessor may have made by omitting to enter the land upon the books, and therefore had the right to show, if he could, that he assessed the land for taxes. And this he could do by his own testimony; the assessment list from which the books were made not being in his possession and presumptively destroyed.

The statement of Margaret Ford, to which objection was interposed, was clearly competent. It tended to show that her husband was claiming the land as his own, a necessary ingredient of adverse possession.—*Barron v. Barron,* 122 Ala. 194, 25 South. 55; 1 Cyc. pp. 1047, 1048.

This brings us to a consideration of the written charges given and refused by the court.

Charge 1, refused to the plaintiff, assumed that Edmondson failed to assess for taxes the land in controversy. With Edmondson's testimony in that he did assess them duirng certain years, the charge was clearly bad, and therefore propery refused.

Charge 2, given at defendant's request, was held, on the first appeal in this case, to have been properly given. The objection now urged against its correctness is that the patent to Johnson was color of title in those lessors who succeeded to his possession. The patent to Johnson cperated to invest the legal title to the land in him, but, being dead when the action was begun, no recovery could be had on the demise laid in him. No conveyance is shown to have been executed by him to the land to the Woodstock Iron Company, or any one else. The legal title to it, therefore, descended to his heirs at law, and is still in them unless it has been divested by adverse

possession. The patent to him did not operate as color of title in plaintiff or any of its demisors. The charge was proper.

Charge 5, given at defendant's request, was held proper on former appeal.—127 Ala. 445, 30 South. 61. It seems, however, to have escaped the attention of the court that it submitted a question of law to the jury. Whether the Woodstock Iron Company had conveyed its whole title to the land before the action was brought was clearly a question of law for the court. The evidence undisputedly established that, when the deed was executed by this company to the Anniston City Land Company, Edmondson was in the adverse possession of the land attempted to be conveyed by it. The deed, therefore, as matter of law, was void against Edmondson, and the jury should have been so instructed upon a written request of defendant. It has been uniformly held by this court that it is erroneous to refer a question of law to the jury.—2 Mayfield's Dig. p. 577, § 270, et seq.

Charge 7 was proper. Charges 15 and 16 are the same as charges 41 and 42 reviewed by us on former appeal. Of them we said they were free from error. But it is now contended that the evidence on this trial tends to show that the instrument from Maddox to Edmondson, upon which the latter relies as color of title, while purporting to be executed in 1868, was really executed in 1894 and dated back for the purpose of giving color of title to Edmondson from 1868. Conceding this to be an indisputable fact, the instrument was color of title from the date it was really executed. The antedating of it did not destroy its binding efficacy between the parties. It did not make it a forgery by Edmondson. It is true that if it was executed in 1894, and not in 1868, it did not have the effect of extending Edmondson's possession beyond his *possessio pedis* during the years elapsing between those dates; but this does not prevent it from being color of title from 1894 on. In other words, the dating of the instrument back did not have the effect of making Edmondson a trespasser upon the land after its execution. On the other hand, it relieved him of being a trespasser and the consequences flowing therefrom.

[Moog v. Doe, *ex dem.* McDermott, *et al.*]

Having possession when this action was begun, under color of title, and under a purchase from Maddox, he may avail himself, no estoppel being shown, of the fact that the legal title to the land was in the heirs of Johnson and thereby put the plaintiff to proof of its title by adverse possession; and unless the plaintiff has established such title in one of the lessors (except Johnson) named in the various demises laid in its complaint, it cannot recover.—10 Am. & Eng. Ency. Law (2d Ed.) pp. 468-488, and the Alabama cases cited in note 3 on page 486. The charges were proper.

The only attack made upon the correctness of charge 19 is based upon the proposition that the instrument from Maddox to Edmondson is not color of title. Having shown that it is the attack must fail.

It requires no comment to sustain the correctness of charges numbered 22 and 27. There are several other charges given at defendant's request, but the giving of them is not insisted on as error.

Reversed and remanded.

HARALSON, DOWDELL, SIMPSON, ANDERSON, and DENSON, JJ., concur.