146 So. 524

## METROPOLITAN LIFE INS. CO. v. CHAMBERS.

### 6 Div. 90.

Supreme Court of Alabama.

Oct. 27, 1932.

Rehearing Denied Jan. 27, 1933.

Further Rehearing Denied March 2, 1933.

Cabaniss & Johnston, of Birmingham, and Huey, Welch & Stone, of Bessemer, for appellant.

194

Ross, Bumgardner, Ross & Ross, of Besse-mer, for appellee.

THOMAS, Justice.

The suit was upon two policies of life insurance in substantial compliance with Code form, and not subject to the demurrer. Section 9531, form 12, Code; Independent Life Ins. Co. v. Carroll, 219 Ala. 79, 121 So. 88; Pence v. Mutual Ben. L. Ins. Co., 180 Ala. 583, 61 So. 817; Sovereign Camp, W. O. W., v. Adams, 204 Ala. 667, 86 So. 737.

Assignments of error not insisted upon within the rule will not be considered. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

The provisions of the policy of life insurance are exhibited by and in special pleas 3 to 9, inclusive. They are as follows:

" 'If, (1) the Insured is not alive or is not in sound health on the date hereof; (or if (2) before the date hereof, the Insured has been rejected for insurance by this or by any other company, order or association), or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, then in any such case, the Company may declare this policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this policy, shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company.'

"And defendant avers that said above quoted provision was breached in that the said insured was not in sound health on the date of the delivery of said policy herein sued on, for that on said date the said insured was suffering with a serious disease or illness, to-wit: cirrhosis of the liver, splenomegalia, œdema of the lungs, ascites or syphilis, which said disease increased the risk of loss. * * *

"And defendant further avers that the insured warranted the above quoted provision of the policy herein sued on to be true, but that the same was not true, in that the insured before and on the date of the policy herein sued on suffered from a serious disease, viz.: cirrhosis of the liver, which fact was material to the risk hereunder and increased the risk of loss. * * *

"And defendant further avers that the matters warranted therein were not true, in that the insured before the date of the policy herein sued on, had a serious disease or illness, namely: cirrhosis of the liver, and on said date was afflicted with and suffering from said disease, which fact was material to the risk hereunder, and the same was made with actual intent to deceive, and the defendant relied thereon and issued said policy, and was deceived thereby. Defendant hereby tenders the plaintiff $14.85, which said sum is the amount of premiums paid on said policy herein sued on."

Such contract stipulations are held valid and enforceable as misrepresentations or warranties, under the meaning of section 8364 of the Code (Brotherhood of Railway, etc., Employees v. Riggins, 214 Ala. 79, 107 So. 44; Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Independent Life Ins. Co. v. Butler, 221 Ala. 501, 129 So. 466; Life Ins. Co. of Va. v. Newell, 223 Ala. 401, 137 So. 16), and, to avoid the policy, unsound health must be misrepresented with intent to deceive and as being material to the risk, or as materially increasing the risk of loss (Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; Life Ins. Co. of Va. v. Newell, supra). There are types of fatal maladies of which the courts take judicial knowledge, such as "tuberculosis and cancer," as being material to the risk of insurance; the courts take no such judicial knowledge of or as to the several forms of diseases, such as syphilis, cirrhosis of the liver, or other ailments alleged in the pleas. Louisiana State Life Ins.

Co. v. Phillips, 223 Ala. 5, 135 So. 841; Southern Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540; Miller v. Metropolitan Life Ins. Co., supra; Brotherhood, etc., v. Riggins, supra; Brown, Adm'r, v. Greenfield Life Association, 172 Mass. 498, 53 N. E. 129; Independent Life Ins. Co. v. Seale, supra; Mutual Life Ins. Co. v. Mankin, 223 Ala. 679, 138 So. 265.

The pleas were drawn under the foregoing or recent authorities. The two classes of pleas are Nos. 3, 4, and 6, challenging the good health of assured when the policy was delivered; and pleas 5, 7, 8, 12, 13, 16, and 17 are that assured had been attended by a physician or treated in a hospital within the time indicated; that such treatment was for a serious disease, material to the risk or increased the risk of loss, and misrepresentation thereof was made with actual intent to deceive; that defendant relied thereon and issued the policies. The plaintiff did not demur to said pleas presenting the two issues of fact. The replications as answers to said pleas were, that, acting through an authorized agent with full knowledge of the facts, defendant "denied liability under said policies on the sole ground that the insured, Flora G. Hollis, was not in sound health on the date of said policy." Thus were the issues of fact as to misrepresentations and warranties —inducements to the issue of the policy— extended to the good health vel non of the insured at the date of the delivery of the policy to and for assured, and previous treatment by physicians and in hospitals.

██ ██ The effect of our cases is that mere representations made in the application for life insurance as to the health of the insured at the time of application, as to previous diseases, and as to previous attendance by a physician, if material to the risk and made with intent to deceive, will defeat a recovery on a policy so issued, where such misrepresentations are relied on by the assurer of such policy of insurance, and the insurance is induced thereby (Mutual Life Ins. Co. v. Mankin, 223 Ala. 679, 138 So. 265); that, where a plea is of warranty as to the health of the insured and the breach thereof, an insurance application not made a part of the policy is not evidence of warranty. To the contrary is the rule as to misrepresentations. National Life & Accident Ins. Co. v. Edwards, 224 Ala. 698, 141 So. 668; Independent Life Ins. Co. v. Butler, 221 Ala. 501, 129 So. 466.

The argument of appellant's counsel presents for review, the refusal of general affirmative instructions, viz. charges 1, 2, 3, and 4. The court instructed, at the request of defendant in writing (charges Nos. 65 to 70, inclusive), that, if the jury believed the evidence in the case, they must find that cirrhosis of the liver, splenomegalia, oedema of the lungs, ascites, syphilis, or delirium tremens, "is a serious disease and increases the risk of loss." And, under such instructions, the jury were required to find that each and all of said diseases were serious and increased the risk of loss, if the evidence in this case relating to any or all of said diseases, and if the assured was afflicted therewith, was believed by the jury.

The rules that obtain as to the giving of affirmative instructions are well understood, and need not be repeated. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. Is there a dispute in the evidence, or a reasonable inference to the contrary, as against the respective defenses presented by said pleas? Was the insured alive and in sound health on the day the insurance was effected and the policy delivered, May 19, 1930? Appellant maintains by its evidence and pleas that such was not the fact, and for that purpose introduced as witnesses Dr. Nicholls, Dr. Parsons, and Dr. Denson. And there are reasonable inferences in the evidence of Drs. Denson and Parsons that would present a conflict and question for the jury on sound health vel non on the date the policy was issued and delivered. They differed as to the result of the Wasserman test, one saying it was positive, and the other saying it was negative. So was there conflict, or reasonable tendency thereof, in Dr. Parsons' testimony that "it would not take two or three months to develop that condition of acute alcoholism, hypertrophis cirrhosis of the liver, yes, sir, to where you could diagnose it. Well, as far as I know a person might feel perfectly well, say on May 19th, 1930, and then die on December 25th, 1930, with cirrhosis of the liver and splenomegalia, oedema of the lungs, ascites and syphilis. No sir, I don't think there would be any sign of that"; and likewise in the hospital notes as to the diagnosis and treatment recommended and given from November 30, 1930, to the time of the death of assured. The witness Denson is contradicted in the statement of time when he treated assured in 1927, or later, and whether at the time, for the period and place indicated by the assured's husband; and further as to whether he told the husband of what she suffered.

It may be said further that Dr. Denson testified that he sent assured to the hospital the first time because "she got drunk and they got in a fight and he beat her up"; that the primary cause of her being admitted to the hospital "was delirium tremens"; that "at the time that she had these delirium tremens and acute alcoholism, she was probably suffering from cirrhosis of the liver, she had it before. In my opinion she was at that time suffering from cirrhosis of the liver also. * * * In my opinion in Mrs. Hollis' case it was the syphilitic type. I couldn't say whether she was cured of this disease before she died, I treated her off and on all along. I do not know whether she had it at the time I

admitted her to the hospital the last time; she had it before."

The Wasserman tests by Dr. Nicholls and Dr. Parsons, which were negative, had a strong tendency to the effect that assured was not then suffering from syphilis; the time being on or about June 22, 1930, and thereafter. The several doctors testified it was possible for assured to have been in sound health when the policy was delivered, and to have died in December thereafter with one of the diseases indicated, though some or one of them said this was not probable; they all said the several diseases or condition therefrom, with which she died, could be caused by other things than syphilis, and could have been caused in a short time by an acute and aggravated alcoholism.

The testimony of appellee tended to show that assured was in sound health at the time of the application and delivery of the policies sued upon. This is shown by defendant's own agent and his certificate, by the husband of the assured, and by Anna Jeffries.

From any phase of the evidence it was a jury question under our rules. That is, the foregoing applies alike to the alleged warranties and representations that assured had not been attended by a physician for a serious disease within two or three years, or had a serious disease, before the contract of insurance was procured and consummated. Denson's testimony is contradicted by the husband of assured; and the evidence of the confinement and treatment in the hospital was after the policy was delivered, and that phase of the defense was not sustained by the proof.

In passing upon the facts, the jury, as matter of law, is not required to accept the conclusions or expressed opinions of expert witnesses, but must determine for themselves the weight to be accorded such testimony and evidence (including the opinion evidence), and rest their verdict "on their own judgment of the facts," and, although the opinion of an expert is entitled to great consideration, the jury was not bound to accept the opinion of such witness. Robinson v. Crotwell, 175 Ala. 194, 57 So. 23. This rule has been steadfastly adhered to in this court. Obear-Nester Glass Co. v. Mobile Drug Co., 208 Ala. 618, 95 So. 13; Ex parte Alabama Dry Dock & Shipbuilding Co., 213 Ala. 88, 104 So. 251; Louisville & N. R. Co. v. Jacobson, 218 Ala. 384, 388, 118 So. 565; Norwood Hospital v. Jones, 214 Ala. 314, 107 So. 858; Batterton v. City of Birmingham, 218 Ala. 489, 119 So. 13; Independent Life Ins. Co. v. Carroll, 219 Ala. 79, 121 So. 88; Sheffield Chamber of Commerce v. Hatch, 220 Ala. 601, 127 So. 173; Citizens' Light, Heat & Power Co. v. Central Trust Co. of Ill., 200 Ala. 18, 75 So. 330; Andrews v. Frierson, 144 Ala. 470, 39 So. 512; Walker v. Alabama, Tennessee & Northern R. Co., 194 Ala. 360, 70 So. 125; Lawson v. Mobile Elec. Co., 204 Ala. 318, 85 So. 257; United States v. Goodloe, 204 Ala. 484, 86 So. 546; Dent v. Foy, 214 Ala. 243, 107 So. 210.

There was no error in refusing defendant's charge No. 34: "The court charges the jury that the defendant's District Manager, Andrew C. Mitchell, had no authority to waive any condition of the contract or contracts herein sued on." That charge was confusing, in that the evidence showed that Mitchell was not, by word or act, speaking for defendant or waiving any provision of the policy on his own account, but that he was merely reading the contents of defendant's letter as to the ground of refusal, which was the act of the defendant as to its refusal of payment on the ground stated by defendant in said letter—that assured "was not in good health when the policy was delivered." As to this, assignments of error 72 to 75, inclusive; are without merit. The objection offered to testimony of the plaintiff to contents of the letter from the home office to Mitchell does not take the point that the letter had not been demanded, and was best evidence. Mitchell had testified that he had the letter wherein the company denied liability on the ground that insured was not in good health when the policy was delivered. The question of waiver vel non and Mitchell's authority under the evidence to so decline on the stated ground were for the jury, and charges 60 and 61 were properly refused. And there was no error in the excerpts from the oral charge, covered by assignments of error 110 and 111, when the whole of the oral instructions is considered. The court did not take that issue from the jury. The question of waiver of the other defenses was for the jury. Though the alleged declarations of the witness tended to show a waiver of other defenses, and other evidence as to the defendant's answers to interrogatories and that of the witness A. C. Mitchell made a jury question. This portion of the oral charge to which exception was taken did not, under the evidence, submit a question of law to the jury, which of course should not be done. Life & Casualty Company of Tenn. v. Street, 213 Ala. 588, 590, 105 So. 672, and authorities; Jeffries v. Pitts, 200 Ala. 201, 75 So. 959, and authorities; Whitsett v. Belue, 172 Ala. 256, 54 So. 677.

We have examined the motion for a new trial, and cannot say, under the issues submitted, that the verdict was wrong and unjust.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

In the main opinion there may be slight confusion as to the pleading upon which the issues were formed. The question of waiver as presented by replications 2 and 3 was properly raised by issues joined on those replications. The issues raised by pleas 3, 4, 9, 10, 11, and 15 were properly presented by issue joined on said pleas by the first replication. Upon these several questions the evidence, or a tendency thereof, was in conflict, and was therefore properly submitted to the jury.

The omission to indicate the foregoing clearly in the opinion was the occasion for putting the case on rehearing.

The court is of opinion, after a re-examination of the evidence and the relation thereto of refused charge 34, requested by the defendant, that said charge should not have been given, as Mitchell's authority, under the evidence, was for the jury.

Application overruled.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.